**EXHIBIT B**





Caution
As of: May 10, 2012

**JAREK MOLSKI; DISABILITY RIGHTS ENFORCEMENT EDUCATION SERVICES: HELPING YOU HELP OTHERS, a California public benefit corporation, v. EVERGREEN DYNASTY CORP., d/b/a OPINION MANDARIN TOUCH RESTAURANT; BRIAN MCINERNEY; KATHY S. MCINERNEY, as joint tenants, Defendants-Appellees.**

No. 05-56452

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

*500 F.3d 1047; 2007 U.S. App. LEXIS 20966; 19 Am. Disabilities Cas. (BNA) 1165; 13 Accom. Disabilities Dec. (CCH) P13-036*

April 17, 2007, Argued and Submitted, Pasadena, California
August 31, 2007, Filed

**SUBSEQUENT HISTORY:** Rehearing denied by *Molski v. Evergreen Dynasty Corp., 521 F.3d 1215, 2008 U.S. App. LEXIS 7372 (9th Cir. Cal., 2008)*
US Supreme Court certiorari denied by *Molski v. Evergreen Dynasty Corp., 2008 U.S. LEXIS 8442 (U.S., Nov. 17, 2008)*

**PRIOR HISTORY:** [\*\*1]
Appeal from the United States District Court for the Central District of California. D.C. No. CV-04-00450-ER. Edward Rafeedie, District Judge, Presiding.
*Molski v. Mandarin Touch Rest., 359 F. Supp. 2d 924, 2005 U.S. Dist. LEXIS 6629 (C.D. Cal., 2005)*
*Molski v. Mandarin Touch Rest., 347 F. Supp. 2d 860, 2004 U.S. Dist. LEXIS 25231 (C.D. Cal., 2004)*

**DISPOSITION:** AFFIRMED IN PART, DISMISSED IN PART.

**COUNSEL:** Thomas E. Frankovich and Jennifer L. Steneberg, Thomas E. Frankovich, A Professional Law Corporation, San Francisco, California, for plaintiff-appellant Jarek Molski and appellant Thomas E. Frankovich, A Professional Law Corporation.

Robert H. Appert, San Gabriel, California, for defendants-appellees Mandarin Touch Restaurant and Evergreen Dynasty Corporation.

Alan H. Boon and David B. Ezra, Berger Kahn, Irvine, California, for defendants-appellees Brian McInerney and Kathy McInerney.

Lizbeth V. West, Charles L. Post, and Thadd A. Blizzard, Weintraub Genshlea Chediak, Sacramento, California, for amici curiae California Restaurant Association, National Federation of Independent Businesses Legal Foundation, California Retailers Association, California Grocers Association, and California Farm Bureau.

**JUDGES:** Before: Jerome Farris and Ronald M. Gould, Circuit Judges, and Kevin Thomas Duffy,\* District Judge.

> \* The Honorable Kevin Thomas Duffy, Senior United States District Judge for the Southern District of New York, [\*\*2] sitting by designation.

**OPINION**

[\*1050] PER CURIAM:

This appeal presents two orders of the district court for our review. The first order declared Jarek Molski a vexatious litigant and ordered that Molski obtain leave of

the court before filing any claims under *Title III of the Americans With Disabilities Act ("ADA")* in the United States District Court for the Central District of California. The second order sanctioned the law firm representing Molski, Thomas E. Frankovich, a Professional Law Corporation ("the Frankovich Group"), by requiring it to obtain leave of the court before filing any claims under Title III of the ADA in the Central District of California. We dismiss two of the defendants-appellees from this appeal for lack of jurisdiction. As to the remaining parties, we hold that the district court acted within its sound discretion in entering the pre-filing orders against Molski and against the Frankovich Group, and we affirm the orders of the district court.

I

Molski, who is paralyzed from the chest down, needs a wheelchair to get around. He has filed about 400 lawsuits in the federal courts within the districts in California. Molski lives in Woodland Hills, California, but frequently travels. [**3] According to Molski's amended complaint in this case, during his travels, he stopped at the Mandarin Touch Restaurant in Solvang, California on January 25, 2003. After finishing his meal, Molski decided to use the restroom. Molski was able to pass [*1051] through the narrow restroom door, but there was not enough clear space to permit him to access the toilet from his wheelchair. Molski then exited the restroom, and in the course of doing so, got his hand caught in the restroom door, "causing trauma" to his hand. Molski's amended complaint also alleged that Mandarin Touch contained other accessibility barriers "too numerous to list."

Asserting claims under the ADA and California law, Molski, along with co-plaintiff Disability Rights Enforcement, Education Services: Helping You Help Others ("DREES"), a non-profit corporation, sought injunctive relief, attorneys' fees and costs, and damages. Specifically, the complaint sought "daily damages of not less than $ 4,000/day . . . for each day after [Molski's] visit until such time as the restaurant is made fully accessible" as well as punitive damages and prejudgment interest. The amended complaint named as defendants Mandarin Touch Restaurant, Evergreen [**4] Dynasty Corp., and Brian and Kathy McInerney.

Shortly after the defendants answered the complaint, Mandarin Touch and Evergreen Dynasty filed a motion for an order (1) declaring Molski a vexatious litigant; (2) requiring Molski to obtain the court's permission before filing any more complaints under the ADA; and (3) imposing monetary sanctions against Molski and his counsel, Thomas E. Frankovich. Defendants Brian and Kathy McInerney did not join the motion. In a published order, the district court granted the motion in part, declaring Molski a vexatious litigant and granting the defendants' request for a pre-filing order. *Molski v. Mandarin Touch Rest.*, 347 F. Supp. 2d 860, 868 (C.D. Cal. 2004) [hereinafter *Mandarin Touch I*].

In determining that Molski was a vexatious litigant, the district court applied the five factors set forth in the opinion of the United States Court of Appeals for the Second Circuit in *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). Those factors are: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing, or duplicative suits; (2) the litigant's motive in pursuing the litigation, for example, whether [**5] the litigant had a good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused unnecessary expense to the parties or placed a needless burden on the courts; and (5) whether other sanctions would be adequate to protect the courts and other parties. *Id.*

The district court first noted that Molski had an extensive history of litigation. *Mandarin Touch I*, 347 F. Supp. 2d at 864. While acknowledging that the fact that a plaintiff has filed a large number of suits, standing alone, does not warrant a pre-filing order, the district court noted that a large volume of suits might indicate an intent to harass defendants into agreeing to cash settlements. *Id.* The district court also noted that Molski's complaints were all textually and factually similar. *Id.* While again not entirely dispositive, the district court surmised that boilerplate complaints might indicate an intent to harass defendants. *Id.*

Against this background, the district court's reasoning made clear that the most important consideration was its specific finding that the allegations in Molski's numerous and similar complaints were "contrived and not credible." *See id.* [**6] The court stressed that Molski often filed multiple complaints against separate establishments asserting that Molski had suffered identical injuries at each establishment on the same day. *Id.* at 865. The district court pointed out that Molski had filed thirteen separate complaints for essentially identical injuries allegedly sustained during one five-day period in May 2003. [*1052] *Id.* In particular, Molski had alleged that, at each establishment, he injured his "upper extremities" while transferring himself to a non-ADA-compliant toilet. *See id.* at 864-65. The district court explicitly found that, in making these duplicitous injury claims, Molski had "plainly lied" in his filings to the court because the district court "simply [did] not believe that Molski suffered 13 nearly identical injuries, generally to the same part of his body, in the course of performing the same activity, over a five-day period." *Id.* at 865, 867.

Applying the second *Safir* factor, the district court concluded that Molski's motivation in bringing numerous suits alleging both violations of the ADA and California state civil rights laws was to extract cash settlements from defendants. *Id.* at 866-67. Although the ADA grants

500 F.3d 1047, *; 2007 U.S. App. LEXIS 20966, **;
19 Am. Disabilities Cas. (BNA) 1165;

[**7] private plaintiffs like Molski only the rights to seek injunctive relief, attorneys' fees, and costs, the California state civil rights laws amplify the scope of relief available under federal law by also permitting the recovery of money damages. Compare 42 U.S.C. §§ 2000a-3(a), 12188(a)(1), with Cal. Civ. Code §§ 51(f), 52(a), 54(c), 54.3(a); see also Moeller v. Taco Bell Corp., 220 F.R.D. 604, 606-07 (N.D. Cal. 2004) (discussing the remedies available under California law). The district court acknowledged that raising multiple claims in one suit is, in and of itself, not vexatious. Mandarin Touch I, 347 F. Supp. 2d at 866. However, because Molski had tried on the merits only one of his approximately 400 suits and had settled all the others, the district court concluded that Molski's consistent approach was to use the threat of money damages under California law to extract cash settlements and move on to his next case. Id.

Applying the third factor from Safir, the district court found that Molski had been represented by counsel in every suit he filed. Id. The court wrote that "courts are generally protective of pro se litigants," but reasoned that "this same protection does not apply [**8] to litigants represented by counsel," and concluded that this factor also weighed in favor of issuing a prefiling order. Id.

Under the fourth Safir factor, the district court determined that the large number of vexatious claims Molski had filed had placed an undue burden on the courts. Id.

Finally, applying the fifth factor from Safir, the district court found that the only effective way to protect the courts and other parties from future vexatious litigation by Molski was by entering a pre-filing order. Id. Accordingly, the district court held that, "[b]efore filing any new litigation alleging violations of Title III of the ADA in the United States District Court for the Central District of California, Molski [must] file a motion for leave to file a complaint." Id. at 868. The court required that Molski "submit a copy of this order and a copy of the proposed filing with every motion for leave." Id.

In the same order, the district court denied the motion of Evergreen Dynasty and Mandarin Touch for sanctions as premature. Id. Finally, the district court issued an order to show cause why it should not impose a pre-filing sanction on Molski's attorneys, the Frankovich Group. Id. at 867.

About [**9] three months later, the district court issued a published memorandum decision regarding that order to show cause. See Molski v. Mandarin Touch Rest., 359 F. Supp. 2d 924 (C.D. Cal. 2005) [hereinafter Mandarin Touch II]. The district court imposed a pre-filing order on the Frankovich Group similar to the order that it had imposed on Molski. Id. at 926. In its decision,

the district court first observed that in 2004 the Frankovich Group filed at least 223 nearly identical lawsuits in the Northern and Central Districts of California, [*1053] that the complaints all stated an ADA claim and the same four claims under California state law, that the damages requested in each case were identical and that, other than superficial alteration of the names and facts, the complaints were textually identical down to the typos. Id. The district court also noted that plaintiffs represented by the Frankovich Group would often file multiple complaints regarding similar or identical injuries sustained at multiple establishments on a single day. See id. at 926-27. The district court noted that one-third of the suits were against ethnic restaurants and commented that "such establishments are seen as easy prey for [**10] coercive claims." Id. at 926.

Supplementing its findings from its decision accompanying the pre-filing order entered against Molski, the district court found that the Frankovich Group had filed sixteen lawsuits on Molski's behalf alleging injuries sustained over a four-day period from May 20, 2003 to May 23, 2003, all alleging that Molski suffered injuries to his upper extremities as a result of transfers or negotiating barriers. Id. at 928. The district court also noted that, on thirty-seven occasions in 2004 alone, Molski alleged that he had been injured two or more times on the same day. Id. On nineteen occasions, Molski alleged that he had been injured three or more times in one day. Id. And, on nine occasions in 2004, Molski alleged that he suffered four or more injuries in one day. Id.

Additionally, the district court discussed what it characterized as an "astonishing" letter the Frankovich Group had sent to defendants in at least two cases after suing them. See id. at 928. The letter described itself as "friendly advice" and counseled the unrepresented defendant against hiring a lawyer. Id. The letter warned that a defense attorney would embark on a "billing expedition" and that [**11] the defendant's money would be best spent on settlement and remediation of the ADA violations, rather than hiring a defense attorney. Id. The letter also advised the defendant that its insurance policy might cover the claim. Id. Finally, the letter advised the defendant that it had no bona fide defense to the lawsuit. Id.

Relying on its inherent power to levy sanctions, the district court ordered

> that The Frankovich Group, as presently constituted, and as it may hereafter be constituted, including shareholders, associates and employees, is required to file a motion requesting leave of court before filing any new complaints alleging violations of Title III of the Americans

with Disabilities Act in the United States District Court for the Central District of California. Such a motion must include a copy of this order.

*Id.* at 926.

As the basis for its sanction, the court first emphasized the ethics rules violations contained in the letter discussed above. *Id.* at 929. For example, the letter offered legal advice to an unrepresented party whose interests conflicted with the interests of the Frankovich Group's clients. *Id.* (citing Model Rules of Prof'l Conduct R. 4.3).

Next, the district court [**12] found that many of the claims of bodily injury in complaints filed by the Frankovich Group were "contrived." *Id.* at 930. The court found in particular that "the rate of physical injury defies common sense," noting that the plaintiffs alleged similar injuries sustained in a similar fashion at different businesses on the same day. *Id.* The court noted that the similar injuries did not excuse the existence of accessibility barriers, but that its finding that the injury claims were contrived was "merely a recognition of the fact that reasonable people, once injured, tend to take affirmative steps to avoid similar physical injuries, rather than repeat [*1054] that same activity 400 times (or five times in the same day)." *Id.* at 931.

The district court also criticized the practice of the Frankovich Group of waiting one year before filing their complaints, in order to maximize the damages threatened and to intimidate the small businesses against whom the Frankovich Group frequently filed its suits. *Id.* at 932.

Finally, the district court found that the high settlement rate in cases brought by the Frankovich Group, coupled with the volume of cases filed, showed a pattern of extortion. *Id.* at 933-34.

In [**13] addition to imposing a pre-filing order on the Frankovich Group, the district court requested that the California state bar investigate the Frankovich Group's practices and consider disciplinary action. *Id.* In the same order, the district court dismissed the plaintiffs' state law claims, declining to exercise supplemental jurisdiction over them. *Id.* at 937.

On August 31, 2005, the district court, in a third published order, granted the defendants summary judgment on Molski's ADA claim for lack of standing. *Molski v. Mandarin Touch Rest.*, 385 F. Supp. 2d 1042, 1044 (C.D. Cal. 2005). Because Molski's ADA claim was the final claim remaining in the case, the district court also entered an order dismissing with prejudice the plaintiffs' case in its entirety. *Id.* at 1048. (The district court had already dismissed DRESS's ADA claim for lack of standing in an unpublished order filed on February 9, 2005.)

On September 13, 2005, Molski and DREES filed their notice of appeal. The notice provided that the plaintiffs were appealing four rulings of the district court: (1) the December 2004 order declaring Molski a vexatious litigant; (2) the February 2005 order dismissing DREES's ADA claim for lack [**14] of standing; (3) the March 2005 order sanctioning the Frankovich Group;[1] and (4) the August 2005 order granting the defendants summary judgment on Molski's ADA claim for lack of standing and dismissing the case.

[1] In the notice of appeal and in their brief to this court, the Frankovich Group characterizes the order entered against it as an order declaring it a "vexatious litigant." The Frankovich Group characterizes the order in this fashion likely because we have held that "an attorney appearing on behalf of a client cannot be sanctioned as a vexatious litigant; by definition, he or she is acting as an attorney and not as a litigant." *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1197 (9th Cir. 1999). However, the district court's order is an order imposing sanctions. In its order, the district court repeatedly refers to its inherent power to levy sanctions against attorneys who abuse the litigation process. *See Mandarin Touch II*, 359 F. Supp. 2d at 928-29.

II

We first address whether the appeal of the pre-filing orders is timely. *28 U.S.C. § 2107(a)* and *Federal Rule of Appellate Procedure 4(a)(1)(A)* provide that the notice of appeal in a civil case must be filed with the district court [**15] clerk within thirty days after the judgment or order appealed from is entered. If a party does not file a notice of appeal within the prescribed time limits, we have no jurisdiction to hear the case. *Bowles v. Russell*, 127 S. Ct. 2360, 2363-64, 168 L. Ed. 2d 96 (2007).

Under *28 U.S.C. § 1291*, parties may appeal to this court only "final decisions" of the district courts. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Cunningham v. Hamilton County*, 527 U.S. 198, 204, 119 S. Ct. 1915, 144 L. Ed. 2d 184 (1999) (internal quotation marks omitted); *Catlin v. United States*, 324 U.S. 229, 233, 65 [*1055] S. Ct. 631, 89 L. Ed. 911 (1945). Neither party disputes that the August 31, 2005 order dismissing the case was an appealable final decision. However, the McInerneys argue that the December 2004 pre-filing order entered against Molski and the March 2005 pre-filing order entered against the Frankovich Group were also final decisions and therefore immediately appealable. They maintain we must dismiss the appeal because the notice of appeal, filed on

September 13, 2005, was filed more than thirty days after the entry of the pre-filing orders. Conversely, Molski and the Frankovich Group argue that the only [**16] final decision in this case is the district court's August 31, 2005 order dismissing the plaintiffs' case in its entirety and that, because they filed a notice of appeal within thirty days of the entry of that order, their appeal is timely.

The appeal of the Frankovich Group is timely under the Supreme Court's decision in *Cunningham* and our subsequent decision in *Stanley v. Woodford*, 449 F.3d 1060 (9th Cir. 2006). In *Cunningham*, the Supreme Court held that an order imposing sanctions on an attorney pursuant to *Federal Rule of Civil Procedure 37(a)(4)* was not an immediately-appealable "final decision." 527 U.S. at 200. In *Stanley*, we extended *Cunningham* and held that we do not have jurisdiction to entertain interlocutory appeals of district court orders sanctioning attorneys pursuant to the district court's inherent power to levy sanctions.[2] *Stanley*, 449 F.3d at 1065. In this case, the district court entered the pre-filing order against the Frankovich Group under its inherent sanctioning power. *Mandarin Touch II*, 359 F. Supp. 2d at 928. Because the Frankovich Group could not immediately appeal the pre-filing order entered against it, and because it filed its notice of appeal within [**17] thirty days of the district court's August 31, 2005 order dismissing the entire case, its appeal is timely.

[2] Prior to *Cunningham*, we had permitted interlocutory appeals of sanctions orders entered against attorneys. *See, e.g., Telluride Mgmt. Solutions, Inc. v. Telluride Inv. Group*, 55 F.3d 463, 465 (9th Cir. 1995); *Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 648 (9th Cir. 1982); *see also Stanley*, 449 F.3d at 1063 (noting that "*Cunningham* effectively overruled earlier Ninth Circuit decisions allowing immediate appeal by attorneys from orders imposing sanctions").

Molski's appeal is also timely. As a general matter, a district court order imposing sanctions on a party is not appealable before the entry of a final judgment. *See Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109, 1113 (9th Cir. 1990); *Johnny Pflocks, Inc. v. Firestone Tire & Rubber Co.*, 634 F.2d 1215, 1216 (9th Cir. 1980). However, we have not previously and specifically addressed whether prefiling orders entered against vexatious litigants are immediately-appealable final decisions. As far as we can tell, no other circuit has considered this question either. We begin with the general presumption [**18] that "an appeal ordinarily will not lie until after final judgment has been entered in a case." *Cunningham*, 527 U.S. at 203. For vexatious litigant orders to be appealable immediately, then, those orders would have to fall within the small category of decisions in which appeal is grounded on the collateral order doctrine which permits immediate appeal of orders that are conclusive and that cannot be effectively reviewed on the appeal of the final judgment. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42, 115 S. Ct. 1203, 131 L. Ed. 2d 60 (1995).

As we see it, pre-filing orders entered against vexatious litigants are not conclusive and can be reviewed and corrected (if necessary) after final judgment. Though [*1056] during the pendency of the appeal, the order might delay or prohibit a litigant from filing claims without leave of court, we have the authority to vacate the order entirely if we conclude the order was unjustified on the merits. *Johnny Pflocks*, 634 F.2d at 1216. Moreover, allowing immediate appeals of pre-filing orders would permit piecemeal appeals and result in a costly succession of appeals from the district court's rulings before entry of final judgment. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374, 101 S. Ct. 669, 66 L. Ed. 2d 571 (1981). [**19] We see no good reason to part ways from our case law holding that sanctions orders entered against a party are not immediately appealable, and we hold that pre-filing orders entered against vexatious litigants are also not immediately appealable. Because Molski filed his notice of appeal within thirty days of the district court's August 31, 2005 order dismissing the plaintiffs' entire case, Molski's appeal is timely.

III

Before we address the merits of the pre-filing orders, we must address a second jurisdictional issue. Brian and Kathy McInerney ask us to dismiss them from this appeal because they were not parties to the motion that led to the prefiling orders entered against Molski and the Frankovich Group. Because Article III limits our jurisdiction to "cases" and "controversies," we dismiss appeals as moot when "the parties lack a cognizable interest in the outcome of the suit." *H.C. v. Koppel*, 203 F.3d 610, 612 (9th Cir. 2000); *see City of Erie v. Pap's A.M.*, 529 U.S. 277, 287, 120 S. Ct. 1382, 146 L. Ed. 2d 265 (2000); *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969). As noted above, the plaintiffs initially appealed four rulings of the district court: the two pre-filing orders and the two orders dismissing Molski and [**20] DREES's claims for lack of standing. However, in their briefs, Molski and the Frankovich Group limit their arguments to the two pre-filing orders entered against them.[3] The McInerneys were not a party to the motion that led to the pre-filing orders that now form the sole basis of the appeal in this case. *See Mandarin Touch I*, 347 F. Supp. 2d at 861. The McInerneys thus have no cognizable interest in whether we affirm or vacate the pre-filing orders, and there is no justiciable dispute between the McInerneys and Molski and the Frankovich Group. We dismiss Brian and Kathy

500 F.3d 1047, \*; 2007 U.S. App. LEXIS 20966, \*\*;
19 Am. Disabilities Cas. (BNA) 1165;

McInerney from this appeal for lack of jurisdiction.

3  In their reply brief, Molski and the Frankovich Group state:

> Since the filing of their Notice of Appeal, appellants have narrowed the issues for appeal, and through their opening brief seek this Court's review of two of the lower court's orders--the order deeming appellant Jarek Molski a vexatious litigant and the order imposing a pre-filing petition sanction on appellant Thomas E. Frankovich, A Professional Law Corporation.

IV

We next address whether the district court erred in declaring Molski a vexatious litigant and in entering a pre-filing order against him. [\*\*21] Two district courts in our circuit disagree about whether Molski's frequent litigation is vexatious. In this case, the Central District of California deemed Molski a vexatious litigant. *See Mandarin Touch I*, 347 F. Supp. 2d at 868. However, the Northern District of California has denied a motion to declare Molski a vexatious litigant in that district. *See Molski v. Rapazzini Winery*, 400 F. Supp. 2d 1208, 1212 (N.D. Cal. 2005). We review a pre-filing order entered against a vexatious litigant for abuse of discretion. *De Long v. Hennessey*, 912 F.2d 1144, 1146 (9th Cir. 1990). A district court abuses [\*1057] its discretion when it bases its decision on an incorrect view of the law or a clearly erroneous finding of fact. *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002); *Does 1-5 v. Chandler*, 83 F.3d 1150, 1152 (9th Cir. 1996).

The All Writs Act, 28 U.S.C. § 1651(a), provides district courts with the inherent power to enter pre-filing orders against vexatious litigants. *Weissman v. Quail Lodge Inc.*, 179 F.3d 1194, 1197 (9th Cir. 1999). However, such pre-filing orders are an extreme remedy that should rarely be used. *De Long*, 912 F.2d at 1147. Courts should not enter pre-filing orders [\*\*22] with undue haste because such sanctions can tread on a litigant's due process right of access to the courts. *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004); *Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982) (noting that the Supreme Court "traditionally has held that the *Due Process Clauses* protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances"); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1336.3, at 698 (3d ed. 2004). A court should enter a pre-filing order constraining a litigant's scope of actions in future cases only after a cautious review of the pertinent circumstances.

Nevertheless, "[f]lagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *De Long*, 912 F.2d at 1148; *see O'Loughlin v. Doe*, 920 F.2d 614, 618 (9th Cir. 1990). Thus, in *De Long*, we outlined four factors for district courts to examine before [\*\*23] entering pre-filing orders. First, the litigant must be given notice and a chance to be heard before the order is entered. *De Long*, 912 F.2d at 1147. Second, the district court must compile "an adequate record for review." *Id.* at 1148. Third, the district court must make substantive findings about the frivolous or harassing nature of the plaintiff's litigation. *Id.* Finally, the vexatious litigant order "must be narrowly tailored to closely fit the specific vice encountered." *Id.*

The district court in this case did not apply the factors we outlined in *De Long*. Instead, the district court looked to Second Circuit case law for guidance, applying that circuit's vexatious litigant standard as outlined in *Safir*. *See Mandarin Touch I*, 347 F. Supp. 2d at 863-64. Molski argues that the district court erred by structuring its analysis around the *Safir* factors rather than the factors we have identified.

One district court in our circuit has correctly observed that the *Safir* factors "have never been adopted by the Ninth Circuit." *Doran v. Vicorp Rests., Inc.*, 407 F. Supp. 2d 1115, 1117 n.3 (C.D. Cal. 2005); *see also Wilson v. Pier 1 Imps. (US), Inc.*, 411 F. Supp. 2d 1196, 1198 (E.D. Cal. 2006) [\*\*24] (noting that the Ninth Circuit has developed a vexatious litigant standard separate from *Safir*). However, the Second Circuit's standard is not irreconcilable with our standard, but rather can be viewed as a tool for analyzing some of the factors we set forth in *De Long*, insofar as *Safir* and *De Long* in substance cover much of the same ground. As we noted above, we held in *De Long* that district courts considering imposing a prefiling order on a vexatious litigant should consider four factors. The first two requirements, (1) notice and an opportunity to be heard and (2) the creation of an adequate record, are procedural considerations--that is, the factors define "[a] specific method or course of action" that district courts should use to assess whether to [\*1058] declare a party a vexatious litigant and enter a pre-filing order. *Black's Law Dictionary* 1241 (8th ed. 2004). The latter two factors, requiring (3) findings of frivolousness or harassment and (4) that the order be narrowly tailored to prevent the litigant's abusive behavior, are substantive considerations--that is, the factors help the district court

500 F.3d 1047, *; 2007 U.S. App. LEXIS 20966, **;
19 Am. Disabilities Cas. (BNA) 1165;

define who is, in fact, a "vexatious litigant" and construct a remedy that will stop [**25] the litigant's abusive behavior while not unduly infringing the litigant's right to access the courts.

The Second Circuit, by contrast, has instructed district courts, in determining whether to enter a pre-filing order, to look at five factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir*, 792 F.2d at 24. These five factors are substantive in that they all address whether a party is a vexatious litigant and whether a pre-filing order will stop the vexatious litigation or if other sanctions are adequate. The Second Circuit has held that district courts should use the five *Safir* factors to answer the ultimate substantive issue in resolving a motion for a prefiling order: "whether a litigant who [**26] has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.*; *see also Cromer*, 390 F.3d at 818 (using the *Safir* factors to "determin[e] whether a prefiling injunction is substantively warranted").

Thus, the Second Circuit's five-factor standard provides a helpful framework for applying the two substantive factors (factors three and four) of our own four-factor standard. *See Rapazzini Winery*, 400 F. Supp. 2d at 1210 ("The *Safir* test['s] examination of history of litigation, motive, and needless burden [is] useful in determining whether the current filings are frivolous and the question of whether other sanctions are adequate [is] similar to the Ninth Circuit's requirement that any pre-filing order be narrowly tailored."). While we structure our analysis here around the four factors we outlined in *De Long*, it was not reversible error for the district court to structure its analysis around the similar factors identified by the Second Circuit.[4]

---

[4] Because the facts underlying the district court's imposition of the prefiling order on Molski are undisputed, we could decide the merits of this appeal even if the district court had applied

[**27] an incorrect legal standard. *See Pullman-Standard v. Swint*, 456 U.S. 273, 292, 102 S. Ct. 1781, 72 L. Ed. 2d 66 (1982); *Kelley v. S. Pac. Co.*, 419 U.S. 318, 331-332, 95 S. Ct. 472, 42 L. Ed. 2d 498 (1974).

The first factor under *De Long* is whether Molksi was given notice and an opportunity to be heard before the district court entered the pre-filing order. This is a core requirement of due process. *De Long*, 912 F.2d at 1147. In this case, Molski had fair notice of the possibility that he might be declared a vexatious litigant and have a pre-filing order entered against him because the district court's order was prompted by a motion filed by the defendants and served on Molski's counsel. Also, Molski had the opportunity to oppose the motion, both in writing and at a hearing. *Cf. Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (holding, in a case involving sanctions levied against an attorney, [*1059] that "an opportunity to be heard does not require an oral or evidentiary hearing on the issue," but instead that "[t]he opportunity to brief the issue fully satisfies due process requirements").

The second factor of the *De Long* standard is whether the district court created an adequate record for review. "An adequate record [**28] for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed." *De Long*, 912 F.2d at 1147. The record before the district court contained a complete list of the cases filed by Molski in the Central District of California, along with the complaints from many of those cases. Although the district court's decision entering the prefiling order did not list every case filed by Molski, it did outline and discuss many of them. *See Mandarin Touch I*, 347 F. Supp. 2d at 864-65. The district court supplemented its findings in *Mandarin Touch I* with a further discussion of Molski's litigation history in *Mandarin Touch II*. *See Mandarin Touch II*, 359 F. Supp. 2d at 927-28. The district court compiled a record adequate for review of its order.

The third factor set forth by *De Long* gets to the heart of the vexatious litigant analysis, inquiring whether the district court made "'substantive findings as to the frivolous or harassing nature of the litigant's actions.'" *De Long*, 912 F.2d at 1148 (quoting *In re Powell*, 271 U.S. App. D.C. 172, 851 F.2d 427, 431 (D.C. Cir. 1988)). To decide whether the litigant's actions are frivolous or harassing, [**29] the district court must "look at 'both the number and content of the filings as indicia' of the frivolousness of the litigant's claims." *Id.* (quoting *Powell*, 851 F.2d at 431). "An injunction cannot issue merely upon a showing of litigiousness. The plaintiff's claims must not only be numerous, but also be patently without merit." *Moy*, 906 F.2d at 470.

Molski concedes that he has filed numerous claims.

500 F.3d 1047, *; 2007 U.S. App. LEXIS 20966, **;
19 Am. Disabilities Cas. (BNA) 1165;

However, Molski contends that his suits were not vexatious because they had merit. As the district court observed, it is likely that many of the businesses Molski sued were not in compliance with the ADA. *Mandarin Touch I*, 347 F. Supp. 2d at 865. However, while Molski's complaints may have stated a legitimate claim for relief, it was not clearly erroneous for the district court to find that the claims of injury contained in those complaints were patently without merit. Because many of the violations Molski challenged were similar, it would have been reasonable for Molski's complaints to contain similar allegations of barriers to entry, inadequate signage, and so on. However, it is very unlikely that Molski suffered the same injuries, often multiple times in one day, performing the same [**30] activities--transferring himself from his wheelchair to the toilet or negotiating accessibility obstacles. Common sense dictates that Molski would have figured out some way to avoid repetitive injury-causing activity; even a young child who touches a hot stove quickly learns to avoid pain by not repeating the conduct. The district court's conclusion that Molski "plainly lied" in making his injury allegations was not clearly erroneous.

In light of the district court's finding that Molski did not suffer the injuries he claimed, it was not clearly erroneous for the district court to conclude that the large number of complaints filed by Molski containing false or exaggerated allegations of injury were vexatious.

The district court's determination that Molski harassed defendants into cash settlements was justified by its findings regarding Molski's litigation strategy. California law provides that a plaintiff who suffers discrimination based on his or her disability may recover up to three times [*1060] the amount of actual damages for each offense, and that, at a minimum, the plaintiff must recover damages of not less than $ 4000. *Cal. Civ. Code § 52(a)*. Thus, Molski usually sought damages of not [**31] less than $ 4000 for each day that a facility did not comply with the ADA. Because Molski would often wait to file suit until a full year elapsed since his visit to the defendants' establishments, defendants often faced claims for statutory damages of over one million dollars. While Molski's claim for daily damages might have been legally justified,[5] it was not clearly erroneous for the district court to find that Molski's litigation strategy evidenced an intent to harass businesses into cash settlements.[6]

---

5   District courts in our circuit disagree about whether a plaintiff may seek daily damages under *California Civil Code sections 52(a)* and *54.3(a)*. Compare *Rapazzini Winery*, 400 F. Supp. 2d at 1211 (holding that daily damages are not available under *section 52(a)*), and *Doran v. Embassy Suites Hotel*, No. C-02-1961, 2002 U.S. Dist. LEXIS 16116, 2002 WL 1968166, at *6 (N.D. Cal. Aug. 26, 2002) (holding that daily damages are not available under either *section 52(a)* or *54.3(a)*), with *Botosan v. Fitzhugh*, 13 F. Supp. 2d 1047, 1051-52 (S.D. Cal. 1998) (holding that an allegation that a plaintiff "is being subjected to a discrimination" meant that the plaintiff had been deterred from visiting a public accommodation [**32] on a daily basis, and supported a claim for daily damages under *sections 52(a)* and *54.3(a)*); see also *Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994) (suggesting that a plaintiff can claim damages under *sections 52(a)* and *54.3(a)* for each particular occasion of deterrence). We could not find any California court that has spoken on this issue.

6   We note that there was a substantial disconnect between the magnitude of injuries Molski suffered and the amount of damages he sought to recover. For example, in this case, in a declaration submitted to the district court, Molski admitted that the injury he suffered at Mandarin Touch--scraping his hand on the door frame--was "not a big injury." Nonetheless, Molski claimed damages of "not less than $ 4,000" for each of the 363 days that elapsed between when he visited Mandarin Touch on January 25, 2003, and when he filed his complaint on January 23, 2004. Molski thus made a damage claim of no less than $ 1,452,000 on the day he filed his complaint, with that amount growing by the day. Even if Molski could claim statutory minimum damages in an amount far greater than any actual injury he suffered, see *Continental Cablevision, Inc. v. Poll*, 124 F.3d 1044, 1049 (9th Cir. 1997) [**33] (suggesting that statutory damages do not require proof of injury); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990) (same), Molski's claims of damages far in excess of the injuries he suffered are not entirely irrelevant to determining whether his litigation was vexatious.

By seeking damages of *not less than* $ 4000 per day, Molski would claim actual damages beyond those to which he was arguably entitled under the California statutes. See *Cal. Civ. Code §§ 52(a), 54.3(a)* (permitting the recovery of actual damages). Also, there existed a possibility that the district court would reject the notion that Molski could recover daily damages, see *supra* note 5, and that Molski would be forced to seek, for the most part, actual damages. Additionally, Molski's complaints usually sought punitive damages. In all of those situations, to recover actual or punitive damages, Molski would need to prove a corresponding injury. Cf. *Continental*

*Cablevision, Inc.*, 124 F.3d at 1049; *Six (6) Mexican Workers*, 904 F.2d at 1306. Because he claimed damages far in excess of his actual injuries, his exaggerated claims of damages support a pre-filing order to the extent that he [**34] sought to recover more than the statutory minimum of damages.

The district court also did not err when it inferred an intent to harass defendants into settlement from the fact that Molski had tried on the merits only one of his roughly 400 ADA cases and the fact that Molski and the Frankovich Group targeted ethnic restaurants viewed as easy prey for coercive claims.

Frivolous litigation is not limited to cases in which a legal claim is entirely without merit. It is also frivolous for a claimant who has some measure of a legitimate claim to make false factual assertions. [*1061] Just as bringing a completely baseless claim is frivolous, so too a person with a measured legitimate claim may cross the line into frivolous litigation by asserting facts that are grossly exaggerated or totally false. In an adversary system, we do not fault counsel or client for putting their best arguments forward, and it is likely the unusual case in which a finding of frivolous litigation follows in the train of a legitimate legal claim. It is a question of degree where the line falls between aggressive advocacy of legitimate claims and the frivolous assertion of false allegations. In this case, the district court, [**35] looking at the allegations of hundreds of lawsuits, made a decision that Molski's baseless and exaggerated claims of injuries exceeded any legitimacy and were made for the purpose of coercing settlement. We cannot on this record conclude that the district court's factual determinations were clearly erroneous or that the district court erroneously reached the legal conclusion that Molski's litigation was vexatious.

The fourth and final factor in the *De Long* standard is that the pre-filing order must be narrowly tailored to the vexatious litigant's wrongful behavior. In *De Long*, we held overbroad an order preventing the plaintiff from filing any suit in a particular district court. *De Long*, 912 F.2d at 1148. Likewise, in *O'Loughlin*, we held that an order requiring a plaintiff to show good cause before making any request to proceed in forma pauperis was not narrowly tailored. *O'Loughlin*, 920 F.2d at 618. Also, in *Moy* we held that an order requiring a plaintiff to obtain leave of court to file any suit was overly broad when the plaintiff had only been highly litigious with one group of defendants. *Moy*, 906 F.2d at 470. Here, by contrast, the district court's order is much narrower--it only [**36] prevents Molski from filing actions under Title III of the ADA in the Central District of California. The order thus appropriately covers only the type of claims Molski had been filing vexatiously--ADA claims. *Cf. Cromer*, 390 F.3d at 818-19 (vacating a pre-filing order that prevented the plaintiff from making "any and all filings" in the present case and also enjoined him from making any future filings in any unrelated case in the district court without obtaining permission from the magistrate judge who issued the order); *In re Packer Ave. Associates*, 884 F.2d 745, 748 (3d Cir. 1989) (vacating as not narrowly tailored a pre-filing order "prohibiting a litigant from ever again filing a document in federal court"). The order also does not prevent Molski from filing any ADA complaints, it merely subjects Molski's complaints to an initial screening review by a district judge. The order is narrowly tailored because it will not deny Molski access to courts on any ADA claim that is not frivolous, yet it adds a valuable layer of protection, which we think was warranted, for the courts and those targeted by Molski's claims. *See Franklin v. Murphy*, 745 F.2d 1221, 1232 (9th Cir. 1984).

In summary, [**37] we reemphasize that the simple fact that a plaintiff has filed a large number of complaints, standing alone, is not a basis for designating a litigant as "vexatious." *De Long*, 912 F.2d at 1147; *In re Oliver*, 682 F.2d 443, 446 (3d Cir. 1982). We also emphasize that the textual and factual similarity of a plaintiff's complaints, standing alone, is not a basis for finding a party to be a vexatious litigant. Accessibility barriers can be, and often are, similar in different places of public accommodation, and there is nothing inherently vexatious about using prior complaints as a template. *See Wilson*, 411 F. Supp. 2d at 1196 (stating that uniform instances of misconduct can justify uniform pleadings).

As we discussed above, the ADA does not permit private plaintiffs to seek damages, [*1062] and limits the relief they may seek to injunctions and attorneys' fees. We recognize that the unavailability of damages reduces or removes the incentive for most disabled persons who are injured by inaccessible places of public accommodation to bring suit under the ADA. *See* Samuel R. Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 U.C.L.A. L. Rev. 1, 5 (2006). [**38] As a result, most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled. District courts should not condemn such serial litigation as vexatious as a matter of course. *See De Long*, 912 F.2d at 1148 n.3. For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA. But as important as this goal is to disabled individuals and to the public, serial litigation can become vexatious when, as here, a large number of nearly-identical complaints contain factual allegations that are contrived, exaggerated, and defy common sense. False or grossly exaggerated claims of injury, especially when made with the intent to coerce settlement, are at odds with our

system of justice, and Molski's history of litigation warrants the need for a pre-filing review of his claims.

We acknowledge that Molski's numerous suits were probably meritorious in part--many of the establishments he sued were likely not in compliance with the ADA. On the other hand, the district court had ample [**39] basis to conclude that Molski trumped up his claims of injury. The district court could permissibly conclude that Molski used these lawsuits and their false and exaggerated allegations as a harassing device to extract cash settlements from the targeted defendants because of their noncompliance with the ADA. In light of these conflicting considerations and the relevant standard of review, we cannot say that the district court abused its discretion in declaring Molski a vexatious litigant and in imposing a pre-filing order against him.

V

The final issue in this case is whether the district court erred in imposing a pre-filing order against the Frankovich Group. We review the district court's imposition of sanctions against an attorney for abuse of discretion. *Weissman*, 179 F.3d at 1197; *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993). "A district court abuses its discretion in imposing sanctions when it bases its decision 'on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir. 1995) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)).

The district court [**40] in this case sanctioned the Frankovich Group with a pre-filing order pursuant to its inherent power to regulate abusive or bad-faith litigation. *Mandarin Touch II*, 359 F. Supp. 2d at 928; see *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 632, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962). "This inherent power derives from the lawyer's role as an officer of the court which granted admission." *In re Snyder*, 472 U.S. 634, 643, 105 S. Ct. 2874, 86 L. Ed. 2d 504 (1985) (citations omitted). The Supreme Court has cautioned that, because of the potency of attorney sanction orders, courts must exercise their inherent sanctioning authority with restraint and sound discretion. *Chambers*, 501 U.S. at 45; *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980).

[*1063] As a procedural matter, before imposing sanctions on an attorney, the district court must afford the attorney notice and an opportunity to be heard. *Weissman*, 179 F.3d at 1198. As a substantive matter, justifications for imposing a pre-filing sanction on an attorney "include the attorney's willful abuse of the judicial process, bad faith conduct during litigation, or filing frivolous papers." *Id.* (citations and internal quotation marks omitted). Violations of ethics rules [**41] can also serve as a ground for imposing sanctions. See, e.g., *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001); *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996); see also C.D. Cal. Local R. 83-3.1.2 (providing that attorneys practicing in the district court must comply with the Rules of Professional Conduct of the State Bar of California, that any violation of those rules "may be the basis for the imposition of discipline," and that the Model Rules of Professional Conduct of the American Bar Association may also be considered as guidance when disciplining attorneys). Additionally, the sanction imposed must be tailored to curtail the attorney's particular misconduct. *Chambers*, 501 U.S. at 57; *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995) (per curiam); *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 420 (6th Cir. 1992).

In this case, the district court afforded the Frankovich Group notice and an opportunity to be heard before imposing its sanction. On December 10, 2004, the district court issued an order to show cause why the court should not impose a pre-filing order on the Frankovich Group for its role in facilitating Molski's litigation. *Mandarin Touch I*, 347 F. Supp. 2d at 867. [**42] The Frankovich Group responded to the order in writing, and on February 7, 2005, the district court conducted a hearing on the order. These proceedings provided the Frankovich Group the notice and opportunity to be heard that due process requires. See *Pac. Harbor Capital*, 210 F.3d at 1118; *Weissman*, 179 F.3d at 1198.

The district court also did not abuse its discretion in making the substantive determination that a pre-filing order was justified based on the conduct of the Frankovich Group. As discussed above, Molski's complaints repeatedly alleged injuries that the district court found to be contrived and untrue. Also, the claims of injuries often were inconsistent with the barriers alleged. For example, complaints filed by the Frankovich Group would allege bodily injury suffered as a result of inadequate signage or the lack of an accessible parking space.

In light of the similarity and exaggerated nature of the frequent injuries Molski alleged, we concluded above that the district court's findings regarding the lack of veracity in Molski's complaints were not clearly erroneous and that the district court was within its discretion in imposing a pre-filing order on Molski. When a client [**43] stumbles so far off the trail, we naturally should wonder whether the attorney for the client gave inadequate or improper advice. That the Frankovich Group filed numerous complaints containing false factual allegations, thereby enabling Molski's vexatious litigation, provided the district court with sufficient grounds on which to base its discretionary

500 F.3d 1047, *; 2007 U.S. App. LEXIS 20966, **;
19 Am. Disabilities Cas. (BNA) 1165;

imposition of sanctions. *Weissman, 179 F.3d at 1198.*

The district court also emphasized that the letter that the Frankovich Group sent to the defendants in at least two cases may have violated multiple ethics rules. While we do not rely on the possible ethical violations as a ground for affirming the sanction imposed on the Frankovich Group, we note that Frankovich Group's decision to send letters that many might view as intimidating to unrepresented defendants was, at best, a questionable exercise [*1064] of professional judgment. The letters gave legal advice to unrepresented parties whose interests conflicted with the interests of the Frankovich Group, and this advice quite possibly ran afoul of relevant ethical rules. *See* ("The lawyer shall not give legal advice to an unrepresented person, other than the [**44] advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client."); Model Code of Prof'l Responsibility DR 7-104(A)(2) (providing that "a lawyer shall not . . . [g]ive advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client").

Additionally, the letters advised the defendant that it had no bona fide defense to the ADA action, when in fact this might not be true in a particular case. For example, the ADA requires the removal of barriers in certain structures only when "such removal is readily achievable." *42 U.S.C. § 12182(b)(2)(A)(iv)*. This possibly false statement of law may have violated ethics provisions regarding a lawyer's candor to third parties. *See* Model Rules of Prof'l Conduct R. 4.1(a) (providing that "[i]n the course of representing a client a lawyer shall not knowingly . . . make a false statement of material fact or law to a third person"); Model Code of Prof'l Responsibility DR [**45] 7-102(A)(5).

The advice that the defendant might have insurance covering the alleged ADA violation might also have violated Model Rule 4.1(a) and Disciplinary Rule 7-102(A)(5) because California courts have held that an insurance company has no contractual duty to defend in an ADA suit alleging that a defendant's facilities were inaccessible. *See Modern Dev. Co. v. Navigators Ins. Co., 111 Cal. App. 4th 932, 943, 4 Cal. Rptr. 3d 528 (2002).* But because the district court was within its discretion in sanctioning the Frankovich Group based on the questionable allegations of physical injury in the complaints they filed, we need not rely on the possible ethics rules violations as a ground for affirming the district court's sanction. [7]

7 Because we do not need to rely on the possibility of ethical rule violations to sustain the district court's pre-filing order against the Frankovich Group, and we decline to do so, we also do not make an ultimate determination whether or not any ethical rule violations occurred. As a general matter, decisions on whether lawyers have violated their ethical obligations are best made in the context of formal bar association proceedings where procedural due process protects the lawyer's [**46] rights while assessing any harm to the public.

Finally, we hold that the district court's pre-filing sanction is sufficiently tailored to combat the Frankovich Group's practice of repetitive litigation based on false allegations of injury. The sanction requires the Frankovich Group to seek leave of the court before filing any more ADA complaints in the Central District of California, and requires that the district court's order in this case accompany the Frankovich Group's motion for leave. Functionally, the sanction ensures that a judge will initially determine whether the factual allegations in future complaints are colorable. The order will protect against the extracting of possibly unjustified settlements from uncounseled small-business defendants intimidated by the spectre of a federal complaint coupled with a coercive and misleading communication from a law firm. However, the order does not make it impossible for the Frankovich Group to pursue meritorious ADA litigation in the district court. *See Franklin, 745 F.2d at 1232.* Moreover, as far as the evidence before the district court showed, the Frankovich [*1065] Group only used abusive litigation tactics in connection with litigation [**47] under the ADA. The pre-filing order rightly applies only to complaints asserting claims for relief under the ADA. *See De Long, 912 F.2d at 1148; O'Loughlin, 920 F.2d at 618.* For these reasons, we hold that the pre-filing order imposed in this case is adequately tailored to punish the past sanctionable conduct of the Frankovich Group, and, more importantly, to protect the courts and the public from any future misconduct by that law firm. [8] Lawyers are required to give their clients' interests zealous advocacy, and while the pre-filing order in this case will not stand in the way of advocacy for legitimate claims, it will help to ensure that the services of the Frankovich Group are used in support of valid claims and not as a device to encourage settlement of unwarranted or exaggerated claims. We affirm the district court's order imposing sanctions on the Frankovich Group.

8 District courts have broad discretion in fashioning sanctions. *Leon v. IDX Sys. Corp., 464 F.3d 951, 961 (9th Cir. 2006); Ritchie v. United States, 451 F.3d 1019, 1026 (9th Cir. 2006); Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 786 (9th Cir. 1983)* (Wallace, J., dissenting in part). Permissible sanctions [**48]

500 F.3d 1047, *; 2007 U.S. App. LEXIS 20966, **;
19 Am. Disabilities Cas. (BNA) 1165;

when vexatious litigation is encountered may include not only a pre-filing order, but also monetary sanctions or even the ultimate sanction of dismissal of claims. We do not here hold that, if a court encounters vexatious litigation, a pre-filing order is the only permissible form of sanction. Rather, the district court may exercise its sound discretion under the facts presented to choose any appropriate sanction that will punish the past misconduct and prevent the future misconduct of the lawyer or party at issue.

In summary, we dismiss defendants Brian and Kathy McInerney from this appeal for lack of jurisdiction. We affirm the district court's order declaring Molski a vexatious litigant and requiring him to obtain leave of the court before filing another ADA complaint in the Central District of California. We also affirm the district court's order sanctioning the Frankovich Group and imposing a similar pre-filing order on it. Costs are awarded to the appellees.

**AFFIRMED IN PART, DISMISSED IN PART.**

VI

1284VW

\*\*\*\*\*\*\*\*\*\* Print Completed \*\*\*\*\*\*\*\*\*\*

Time of Request: Thursday, May 10, 2012   14:34:31 EST

Print Number:    1825:349608010
Number of Lines: 700
Number of Pages:

Send To:  Maupin, Pepper
          FRANKOVICH GROUP
          4328 REDWOOD HWY STE 300
          SAN RAFAEL, CA 94903-2157