# EXHIBIT C

521 F.3d 1215, *; 2008 U.S. App. LEXIS 7372, **;
; 20 Am. Disabilities Cas. (BNA) 795



Caution
As of: May 10, 2012

JAREK MOLSKI; DISABILITY RIGHTS ENFORCEMENT EDUCATION SERVICES: HELPING YOU HELP OTHERS, a California public benefit corporation, Plaintiffs-Appellants, v. EVERGREEN DYNASTY CORP., d/b/a MANDARIN TOUCH RESTAURANT; BRIAN MCINERNEY; KATHY S. MCINERNEY, as joint tenants, Defendants-Appellees.

No. 05-56452

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

521 F.3d 1215; 2008 U.S. App. LEXIS 7372; 13 Accom. Disabilities Dec. (CCH) P13-113; 20 Am. Disabilities Cas. (BNA) 795

April 7, 2008, Filed

**SUBSEQUENT HISTORY:** Amended by *Molski v. Evergreen Dynasty Corp.*, 2008 U.S. App. LEXIS 8664 (9th Cir. Cal., Apr. 22, 2008)

**PRIOR HISTORY:** [**1]
Central District of California, Los Angeles. D.C. No. CV-04-00450-ER.
*Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 2007 U.S. App. LEXIS 20966 (9th Cir. Cal., 2007)

**JUDGES:** Before: Jerome Farris and Ronald M. Gould, Circuit Judges, and Kevin Thomas Duffy,* Senior Judge. Dissent by Judge Berzon; Dissent by Chief Judge Kozinski. BERZON, Circuit Judge, with whom KOZINSKI, Chief Judge, and PREGERSON, REINHARDT, HAWKINS, McKEOWN, WARDLAW, W. FLETCHER, and PAEZ, Circuit Judges, join, dissenting from the denial of rehearing. KOZINSKI, Chief Judge, with whom Judges REINHARDT, FLETCHER and PAEZ join, dissenting from the order denying the petition for rehearing.

    * The Honorable Kevin Thomas Duffy, Senior United States District Judge for the Southern District of New York, sitting by designation.

**OPINION**

[*1216] **ORDER**

All judges on the panel have voted to deny Plaintiff/Appellant's Petition for Panel Rehearing, and so that petition is DENIED.

The full court has been advised of Defendant/Appellee's Petition for Rehearing En Banc, and a judge of this court requested a vote on whether this case should be reheard en banc; however, a majority of the active judges did not vote in favor of en banc consideration. *Fed. R. App. P. 35.* Accordingly, the Petition for Rehearing En Banc is also DENIED. No further petitions for [**2] rehearing or rehearing en banc shall be considered.

**DISSENT BY:** BERZON; KOZINSKI

**DISSENT**

BERZON, Circuit Judge, with whom KOZINSKI, Chief Judge, and PREGERSON, REINHARDT, HAWKINS, McKEOWN, WARDLAW, W. FLETCHER, and PAEZ, Circuit Judges, join, dissenting from the denial of rehearing en banc:

Pre-filing orders infringe the fundamental right to access the courts. They are properly reserved for extreme situations where there is absolutely no possibility that the allegations could support judicial relief *and* filing the suit



521 F.3d 1215, *; 2008 U.S. App. LEXIS 7372, **;
; 20 Am. Disabilities Cas. (BNA) 795

is a burden on both the court and the opposing party -- a costly exercise in futility. Under those circumstances, less draconian sanctions will not suffice. Because, by any measure, this is not such a case, I respectfully dissent from the denial of rehearing en banc.

I.

The *First Amendment* right to "petition the Government for a redress of grievances" -- which includes the filing of lawsuits -- is "one of 'the most precious of the liberties safeguarded by the *Bill of Rights*.'" *BE & K Constr. Co. v. NLRB, 536 U.S. 516, 524, 122 S. Ct. 2390, 153 L. Ed. 2d 499 (2002)* (quoting *United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 222, 88 S. Ct. 353, 19 L. Ed. 2d 426 (1967)*). Consequently, a determination that a litigant has repeatedly filed frivolous and harassing [**3] lawsuits itself implicates his *First Amendment* interest in access to the courts. Indeed, where an individual's use of the courts is declared abusive or baseless, "the threat of reputational harm[,] . . . different and additional to any burden posed by other penalties," is alone sufficient to trigger *First Amendment* concerns. *See id. at 530*.

Because the right to access the courts implicates due process and *First Amendment* rights, courts have been exceedingly reluctant to restrict such access. We have noted that because a pre-filing order "restricts an individual's access to the court system, it is an extraordinary remedy that should be narrowly tailored and rarely used." *Moy v. United States, 906 F.2d 467, 470 (9th Cir. 1990)*. This is so even though litigants and lawyers covered by a pre-filing order are not entirely enjoined from filing suits covered by the order, but must obtain the court's approval first. This pre-clearance requirement is in itself a serious imposition on the right to access [*1217] the courts: "Among all other citizens, he is to be restricted in his right of access to the courts. As far as he is concerned, his future filings run the risk of delay and even possible rejection [**4] before he can call upon defendants to respond to those filings. . . . We cannot predict what harm might come to him as a result, and he should not be forced to predict it either. What he does know is that a Sword of Damocles hangs over his hopes for federal access for the foreseeable future." *Id.*

Because it interferes with the basic right of court access, "[a]n injunction cannot issue merely upon a showing of litigiousness." *Id.* Rather, "[t]he plaintiff's claims must not only be numerous, but also be *patently without merit*." *Id.* (emphasis added). Other circuits have similarly emphasized the extreme caution to be used in imposing such orders. *See, e.g., In re Powell, 271 U.S. App. D.C. 172, 851 F.2d 427, 434 (D.C. Cir. 1988)* ("[M]ere litigiousness alone does not support the issuance of an injunction. Both the number and content of the filings bear on a determination of frivolousness or harassment." (citation and footnote omitted)); *In re Oliver, 682 F.2d 443, 446 (3d Cir. 1982)* ("Oliver's litigiousness alone would not support an injunction restricting his filing activities. . . . [L]egitimate claims should receive a full and fair hearing no matter how litigious the plaintiff may be.").

The insistence that potentially [**5] meritorious suits, however numerous and similar, cannot be the basis for a pre-filing order has echoes in analogous areas of law that similarly reflect the *First Amendment* protection accorded court access. Under California law, for example, the California Supreme Court, emphasizing the importance of assuring access to the courts, has repeatedly held that improper motive alone is not sufficient basis for establishing the tort of abuse of process. *See Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., 42 Cal. 3d 1157, 232 Cal. Rptr. 567, 728 P.2d 1202, 1209 (Cal. 1986)* ("[T]he mere filing or maintenance of a lawsuit -- even for an improper purpose -- is not a proper basis for an abuse of process action."). The United States Supreme Court has established a similar test in determining when litigation can be enjoined or declared unlawful: "[O]ur holdings [in prior cases] limited regulation to suits that were both objectively baseless *and* subjectively motivated by an unlawful purpose." *BE & K Constr., 536 U.S. at 531* (emphasis in original) (discussing the sanctioning of litigation under the antitrust laws or as an unfair labor practice under the National Labor Relations Act).

II.

The panel opinion pays lip service [**6] to the long-standing and constitutionally-based principle that "[a]n injunction cannot issue merely upon a showing of litigiousness. The plaintiff's claims must not only be numerous, but also be patently without merit." *500 F.3d 1047, 1059 (9th Cir. 2007)* (quoting *Moy, 906 F.2d at 470*). Yet, neither the panel nor the district court contend that all or most of Molski's hundreds of ADA claims actually lack merit. In fact, both expressly concede that they are probably meritorious. *Id. at 1062* ("We acknowledge that Molski's numerous suits were probably meritorious in part -- many of the establishments he sued were likely not in compliance with the ADA."); *Molski v. Mandarin Touch Rest., 347 F. Supp. 2d 860, 865 (C.D. Cal. 2004)* ("It is possible, even likely, that many of the businesses sued [by Molski] were not in full compliance with the ADA."). Instead, the panel relies on the district court's finding that Molski's "*claims of injury . . .* were patently without merit," and concludes this is enough to make the litigation frivolous. *500 F.3d at 1059* (emphasis added).

[*1218] As an initial matter, the district court's conclusion that Molski fabricated many allegations of injury, which was affirmed [**7] by the panel, simply

cannot meet our standard for factual frivolousness. To be frivolous, factual allegations must be "wholly fanciful" or "conflicting with facts of which the district court may take judicial notice." *Franklin v. Murphy*, 745 F.2d 1221, 1228 (9th Cir. 1984) (internal quotation marks omitted) (quoting *Crisafi v. Holland*, 211 U.S. App. D.C. 75, 211 U.S. App. D.C. 75, 655 F.2d 1305, 1307-08 (D.C. Cir. 1981) (per curiam)); *see also In re Thomas*, 508 F.3d 1225, 1227 (9th Cir. 2007) (importing *Franklin's* factual frivolousness standard to reviewing appeals submitted pursuant to pre-filing orders).

The district court and the panel relied solely upon the similarity and multitude of Molski's injuries: Numerous complaints alleged that he incurred physical injuries while attempting to overcome non-ADA-compliant public accommodations. The panel asserts that "it is very unlikely that Molski suffered the same injuries, often multiple times in one day, performing the same activities -- transferring himself from his wheelchair to the toilet or negotiating accessibility obstacles. Common sense dictates that Molski would have figured out some way to avoid repetitive injury-causing activity; even a young child who touches a hot stove [**8] quickly learns to avoid pain by not repeating the conduct." 500 F.3d at 1059. On this reasoning, the panel concludes that the district court's finding that Molski "plainly lied" in his injury allegations was not clearly erroneous.

But the similarity of these injuries alone does not lead to the conclusion that the allegations are patently false. First, as the panel concedes, "[b]ecause many of the violations Molski challenged were similar, it would have been reasonable for Molski's complaints to contain similar allegations of barriers to entry, inadequate signage, and so on." *Id.* In addition, Molski provided a reasonable explanation for the similarity of his injuries and the injurious nature of seemingly small acts. As another district court explained, in rejecting the district court's analysis here and declining to find Molski a vexatious litigant:

> Molski explains that, as a paraplegic, he relies entirely on his upper extremities and the strain of the improper transfers to the toilet are real injuries to him. Even though the pain might be short-lived, the cumulative effect of the multiple injuries is to wear down his upper extremities, joints, and shoulders. Molski also frequently injures [**9] his buttocks when forced to transfer to a toilet that is not configured in compliance with the ADA. Molski explains that, because he sits on his buttocks all day, bruises on his buttocks do not heal quickly or easily....
>
> Molski supports the veracity of his claims of injury with a declaration from his treating physician, Dr. Thomas Lyle Hedge. . . . Dr. Hedge declares that Molksi [sic] has suffered "repetitive, continuous and cumulative" trauma/physical injury to the upper extremities from confronting architectural barriers such as unpaved pathways and toilets without proper grab bars or at an improper height.

*Molski v. Rapazzini Winery*, 400 F. Supp. 2d 1208, 1210-11 (N.D. Cal. 2005) (record citations omitted). Given this explanation,[1] the factual allegations of injury here were simply not "wholly fanciful," *Franklin*, 745 F.2d at 1228, even if the incremental nature of the alleged injury was not spelled out.

  1  Molski and Dr. Hedge both submitted declarations in the instant case providing the same explanations accepted in *Rapazinni Winery*.

[*1219] But even if Molski's allegations of injury were meritless, the pre-filing order would not be justified: The allegations of injury are entirely irrelevant [**10] to Molski's ADA causes of action; past actual injury is not necessary to bring a claim under Title III of the ADA. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Allegations of injury are not necessary either to sue for statutory damages under California's Unruh Act. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000). The panel appears to so recognize, but suggests that there are some scenarios under which Molski might want to pursue actual rather than statutory damages under state law, so the allegations of physical injury "are not entirely irrelevant." 500 F.3d at 1060 n.6. That may be. But the tangential connection of the physical injury allegation to the potential for success in the cases certainly makes it difficult to characterize the complaints as a whole as frivolous in any ordinary sense of that term.

The panel's other complaints similarly fail to justify a prefiling order. The panel complains that Molski sought daily statutory damages under California law, yet recognizes that these claims "might have been legally justified" because of a split among district courts on the issue. *Id.* at 1060 & n.5. The panel also relies upon the fact that Molski [**11] often waited a year before filing suit, which greatly increased the statutory damages claim. But this conduct is permitted under the statute; if there is a problem created by the statutory scheme, the appropriate fix is legislative, not judicial.

In sum: The panel justifies its ruling by relying on assertedly false claims of injury that would be relevant only under California law and on permissible litigation

521 F.3d 1215, *; 2008 U.S. App. LEXIS 7372, **;
; 20 Am. Disabilities Cas. (BNA) 795

strategies that increase Molski's damages claim under California law. Not only do these reasons entirely fail to justify the extreme sanction of a pre-filing order, they are also exclusively concerned with Molski's claims under state law. Yet the prefiling order enjoins Molski from filing only *federal ADA claims*. "If we are to permit pre-filing restrictive orders, these orders must be narrowly tailored to closely fit the specific vice encountered." *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990). At the very least, the pre-filing order should restrict Molski's ability to file access claims only under California law. What we have here, in other words, is not a "close[] fit" but a grotesquely oversized pre-filing order, going far beyond the only "vice[s] encountered" in [**12] the complaints, none of which have anything at all to do with the allegations of ADA violations.

III.

I recognize that some of the tactics used by Molski and the Frankovich Group are cause for concern. But there are ample avenues for addressing any concerns raised by this case -- avenues that do not involve one judge, acting alone, imposing a pre-filing order that covers an entire district.[2]

> 2  Perhaps because of the existence of so many alternative avenues for sanctioning counsel, pre-filing orders have been overwhelmingly, if not exclusively, issued against *pro se* parties.

Let me emphasize the impact of the district court's decision: *One judge* has determined that Molski and the Frankovich Group are forbidden to file ADA complaints without prior approval in the *entire Central District*. That judge has not in any way specified what standards will be used in deciding which cases may be filed and which may not. Other judges in that district may disagree with the imposition of the pre-filing order -- in fact, a majority may. Yet, they have no say at all in the matter. The likelihood of internal disagreement is highlighted by the fact that a judge in the Northern District has determined, [*1220] on [**13] a similar record, that Molski should *not* be subjected to a pre-filing order. *Molski v. Rapazzini Winery*, 400 F. Supp. 2d at 1209-12. So Molski can now bring ADA suits in the Northern District seeking to assure access in places of public accommodation, but cannot do so in the Central District without subjecting himself to prescreening by a single judge.

There are alternative mechanisms for addressing the perception that a litigant or lawyer is engaged in widespread litigation abuse -- mechanisms that do not allow one judge, acting alone, to bar the courthouse door in perpetuity. The Central District, like most districts, has detailed procedures to investigate and sanction attorney misconduct. *See* C.D. CAL. LOCAL R. 83-3. This process permits the involvement of multiple judges and members of the bar, rather than the one-judge disciplinary committee presented here. Or, if the conduct of ADA litigation concerns the entire Central District judiciary, the court as a whole can issue a general order setting forth particular guidelines for ADA access cases, as the Northern District has. *See* N.D. CAL. GEN. ORDER 56.

Moreover, *Rule 11* is designed to deal on a case-by-case basis with the precise [**14] abuse found here: false factual allegations. *See* FED. R. CIV. P. 11(b)(3), (c)(1) (requiring an attorney or unrepresented party to certify that "the factual contentions [contained in a pleading or motion] have evidentiary support" and permitting sanctions on "any attorney, law firm, or party that violated the rule or is responsible for the violation"). As far as I can tell, *Rule 11* sanctions have never been imposed on either Molski or the Frankovich Group for their ADA litigation. Surely a lesser sanction in an individual case should first be attempted to cure any offending conduct before a broad pre-filing order covering all future cases is imposed. *See Lysiak v. CIR*, 816 F.2d 311, 312 (7th Cir. 1987) (imposing pre-filing order where "the pattern of baseless litigation generated by Lysiak, even after prior sanction, demonstrates that it would be fruitless simply to impose an additional monetary penalty").

IV.

At bottom, the panel may be uncomfortable with ADA litigation that it suspects is being brought to induce settlement.[3] This concern with serial access litigation is shared by many, rightly or wrongly. But the phenomenon is a creature of our federal and state statutes and cannot [**15] justify the issuing of prefiling orders that enjoin meritorious lawsuits. Moreover, while self-interest surely drives serial access litigation in part, the reason there *can* be so many lawsuits about access to public accommodations is that there are so many violations of the laws that seek to assure access, and so many disabled people are thwarted from participating equally in the activities of everyday life. I fear that the panel's opinion may be widely used to restrict critical private enforcement of civil rights laws by other litigants and lawyers. This case should have been heard en banc to prevent that result.

> 3  It is not clear why the settlements are so troubling. Judging by the dozens of settlement agreements in the record, the vast majority of these settlements include provisions for remedying barriers to access -- precisely the goal sought by the ADA -- as well as small amounts of monetary relief and payment of attorney's fees.

KOZINSKI, Chief Judge, with whom Judges REINHARDT, W. FLETCHER and PAEZ join, dissenting from the order denying the petition for

521 F.3d 1215, *; 2008 U.S. App. LEXIS 7372, **;
; 20 Am. Disabilities Cas. (BNA) 795

rehearing en banc:

I agree with Judge Berzon that neither the district court nor our panel had an adequate basis for finding [**16] that Molski "plainly lied" about his injuries, or that his [*1221] "claims of injury . . . were patently without merit." *Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1059 (9th Cir. 2007); see Molski v. Mandarin Touch Restaurant, 347 F. Supp. 2d 860, 867 (C.D. Cal. 2004)*. But I do so on an additional ground: The district court had no power to make such findings, nor a record to base them on, because it never held an evidentiary hearing.

Oh, sure, the docket indicates (somewhat misleadingly) that a "hearing" was held on the vexatious litigant motion, but it plainly was not an evidentiary hearing. What happened instead is this: The judge spent the first half of the hearing berating Molski and his lawyers, in pretty much the same terms as his subsequent order--which suggests that his views were cast in cement by the time of the "hearing." Compare Excerpts of Record (ER) 1094 ("After examining plaintiff's extensive collection of lawsuits . . . ."), and ER 1097 ("The Court simply does not believe that Molski suffered 13 identical injuries generally to the same part of his body, in the course of performing the same activity, over a five-day period."), *with Mandarin Touch Restaurant, 347 F. Supp. 2d at 864* [**17] ("After examining Plaintiff's extensive collection of lawsuits . . . ."), *and id. at 865* ("The Court simply does not believe that Molski suffered 13 nearly identical injuries, generally to the same part of his body, in the course of performing the same activity, over a five-day period."). After the judge was done, Molski's counsel was allowed to address the court, ER 1102-06, but no witnesses testified, no evidence was presented, there was no cross-examination and there were no evidentiary rulings--in short, there was no trial. Molski, whose veracity the district court impugned, was not even present.

How then did the judge manage to make factual findings, and how does this panel affirm those findings on appeal? It's bad enough that the panel relies on its own armchair wisdom about plaintiff's supposed ability to avoid repetitive injuries, *Evergreen Dynasty, 500 F.3d at 1059*, rather than looking to whether the record supports the findings of the district court. Worse still is that there is no record the panel could consult if it were of a mind to do so. There is no statement at all from Molski himself, as the complaint is not verified. The panel does not find the absence of an evidentiary [**18] record remarkable, perhaps laboring under the mistaken impression that there must be an evidentiary record somewhere under all that paper. Still and all, those of us unfamiliar with the alchemy of making findings based on no evidence--and affirming them based on no record--would dearly love to know why the absence of an evidentiary record is not an insuperable obstacle to affirming a district court's factual finding.

The bottom line is this: The district court made, and the panel affirms, a finding that Molski is a liar and a bit of a thief, without any evidence at all. The district court and the panel also manage to find that plaintiff just couldn't have suffered the injuries he alleges, without the benefit of an expert or any other proof. But does the district court have authority to make findings that severely curtail access to the federal court, not only for plaintiff but also for his lawyers and their other clients (present and future), without swearing in a single witness? Without giving notice and an opportunity to present evidence? Without cross-examination? Without any of the other rudiments of due process? Isn't Molski at least entitled to get on the stand, look the judge [**19] in the eye and tell his story?

Fortunately, there's a cure. The lawyers and judges of the Central District don't have to put up with this kind of tyranny by one judge acting entirely on his [*1222] own. A member of a multi-judge court should not be able to single-handedly cut off one party or law firm's access to all the other judges of the court. The Central District judges can and should adopt a local rule or general order that any judge wishing to bar a litigant or a law firm from accessing the court must obtain the concurrence of a committee of his colleagues. Enforcement of the order, too, should not be entrusted to the judge who entered it, as he may take an unduly broad view as to its scope. Far wiser, and fairer, to have other judges, drawn at random, enforce the order in future cases.

By adopting such measures, the court would ensure that draconian orders such as this one will not be the handiwork of a single judge, subject only to cursory supervision by the court of appeals, but a shared responsibility of the court's judges, as such orders should be. And the new local rule or general order should be applied retroactively to Molski's case.

Like Judge Berzon, I'm very sorry that such [**20] an order was ever entered, and on such a non-existent record. I'm even sorrier that our panel has seen fit to affirm it, and that our full court has chosen to look the other way. But ultimately, it's up to the judges of the Central District to ensure that due process is upheld and that an injustice is avoided. I have every confidence that they will be equal to the task.

1284VW

\*\*\*\*\*\*\*\*\*\* Print Completed \*\*\*\*\*\*\*\*\*\*

Time of Request: Thursday, May 10, 2012   14:37:09 EST

Print Number:    1827:349608832
Number of Lines: 292
Number of Pages:

Send To:  Maupin, Pepper
          FRANKOVICH GROUP
          4328 REDWOOD HWY STE 300
          SAN RAFAEL, CA 94903-2157